UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
EUGENE C. SHEPHERD,

        Plaintiff,

  -v-                                                            No.  11-CV-6860-LTS-RLE

C.O. JAMES POWERS et al.,

        Defendants.
-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Eugene Shepherd ("Shepherd" or "Plaintiff"), who was at all relevant times an inmate or detainee at the Westchester County Jail, brings this civil rights action against Correction Officer James Powers ("Powers"), Correction Officer Mervin Enders ("Enders"), and Westchester County ("the County") (collectively, "Defendants").  Shepherd asserts (1) a claim of excessive force against Powers pursuant to 42 U.S.C. § 1983; (2) a claim of excessive force against Enders pursuant to 42 U.S.C. § 1983; (3) a claim of liability against the County based on Monell v. Dep't of Social Servs., 436 U.S. 658 (1978), for the exercise of excessive force by Powers and Enders; (4) a claim against Powers for malicious prosecution pursuant to 42 U.S.C. § 1983 and state law; and (5) a claim against the County for denying or interfering with Plaintiff's religious rights pursuant to 42 U.S.C. §§ 1983 and 2000cc-1.[1]

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The Court has considered carefully all of the parties' submissions in connection with the motion.

---

[1] The claims listed herein are the sole claims Plaintiff indicates that he "continues to pursue."  (Compare Pl.'s Response to Defs.' Rule 56.1 Statement and Counterstatement at 16, ¶ 111, docket entry no. 199, with Defs.' Rule 56.1 Statement at 21, ¶ 111, docket entry no. 181.)  All other claims are deemed withdrawn and are hereby dismissed.

The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367. For the following reasons, Defendants' motion is denied in its entirety.

## BACKGROUND

The following facts are undisputed except insofar as they are characterized here as allegations. On April 18, 2009, Shepherd was arrested and charged with, among other things, burglary in the third degree. (Defs.' Rule 56.1 Statement at ¶ 11.[2]) Shepherd attended a court appearance in connection with those charges on March 9, 2010. (Id. at ¶ 13.) After attending the appearance, Shepherd was taken back to the Westchester County Jail. (Id. at ¶ 14.) According to the Westchester County Department of Correction Policy and Procedure, inmates returning from court appearances must be strip-searched. (Id. at ¶ 15.) Powers was the on-duty correction officer assigned to search inmates returning from court appearances on March 9, 2010. (Id. at ¶ 17.) During a routine strip search, an inmate must remove all of his clothing, show the bottoms of his feet, squat, and cough "to show that he is not hiding any contraband within his buttocks or anus." (Id. at ¶ 21.)

Defendants allege that Powers instructed Plaintiff to remove all of his clothing. (Defs.' Rule 56.1 Statement at ¶ 26.) They allege that Plaintiff began to remove his clothing, but refused to remove his underwear and socks. (Id. ¶ 27.) Defendants allege that, when Powers ordered Plaintiff to take off his underwear, Plaintiff accused Powers of being a "fagot [sic]." (Id. at ¶ 29.) Plaintiff then allegedly removed his underwear and threw it at Powers and attempted to throw a sock toward Powers. (Id. at ¶ 29.) Defendants allege that Powers attempted to stop Plaintiff from throwing the other sock at him and that Powers responded by pinning Powers'

---

[2]   Citations to S.D.N.Y. Local Civil Rule 56.1 Statements incorporate by reference the evidence cited therein.

head to the metal search table in the cubicle. (Id. at ¶ 30.) Defendants allege that Powers ordered Plaintiff to stop, but that Plaintiff continued to struggle. (Id. at ¶¶ 30–31.) Defendants allege that nearby officers and the Emergency Response Team ("ERT") responded to the disturbance, which was classified as a Code 13 (officer needs assistance) matter. (Id. at ¶¶ 34–42.) One of the ERT officers, Enders, placed Plaintiff in handcuffs and leg irons. (Id. at ¶ 45.) Defendants allege that Plaintiff did not cooperate with instructions to comply with a search. (Id. at ¶ 48.)

Plaintiff presents a different version of the events. Plaintiff alleges that he removed all of his clothing except his socks and underwear of his own initiative after entering the search cubicle. (Pl.'s Rule 56.1 Statement at ¶ 23.) Powers, Plaintiff alleges, gave no verbal instructions for a few minutes. Plaintiff alleges that he said to Powers, "What, are you new, you don't know what to do? Let me go ahead and initiate this for you, and I dropped [my underwear] and I squat." (Pl.'s Rule 56.1 Statement at ¶ 28.) After Plaintiff dropped his underwear and squatted once, Powers asked him to "do it again." Plaintiff then responded by asking Powers whether he was gay. (Pl.'s Rule 56.1 Statement at ¶ 29; Defs.' Rule 56.1 Statement at ¶ 29.) Plaintiff alleges that, after Powers instructed Plaintiff to pull down his underwear again, Plaintiff drew down his underwear and squatted. (Pl.'s Rule 56.1 Statement at ¶ 30.)

Plaintiff alleges that Powers screamed at him to take the rest of his clothing off and that Plaintiff responded by placing his underwear on the table and throwing his socks on the table. (Pl.'s Rule 56.1 Statement at ¶ 30.) Plaintiff alleges that Powers then reached across the table and tried to choke him. (Pl.'s Rule 56.1 Statement at ¶ 32.) According to Plaintiff, he then retreated to a corner of the search cubicle. (Pl.'s Rule 56.1 Statement at ¶ 33.) Plaintiff alleges that Powers then grabbed his left leg. (Id.) Plaintiff alleges that Powers also grabbed and

squeezed Plaintiff's testicles.  (Id.)  Plaintiff alleges that he responded by "screaming and hollering, 'what's the matter with you'" and "help" as he tried to push Powers away.  (Id.)

One other correction officer and officers from the ERT, including Officer Enders, responded to the disturbance.  (Defs.' Rule 56.1 Statement ¶ 36.)  Plaintiff alleges that Powers was still squeezing his testicles when the ERT entered the room and that Powers did not release him until the ERT team members pulled Powers off the table.  (Pl.'s 56.1 Statement ¶¶ 33–34.)  The ERT placed Plaintiff in handcuffs and leg irons.  (Defs.' Rule 56.1 Statement ¶¶ 45–46.)  The ERT then proceeded to search Plaintiff.  (Defs.' Rule 56.1 Statement ¶ 47.)  Plaintiff alleges that, after the search, one of the officers tossed him orange prison clothing and Plaintiff tossed it back because the clothing was too small.  (Defs.' Rule 56.1 Statement ¶ 50.)  Plaintiff alleges that Enders responded by "grabb[ing]/yok[ing]" Plaintiff and throwing Plaintiff "into the crowd of emergency responders who jumped on him and forcibly restrained him."  (Pl.'s Rule 56.1 Statement ¶ 51.)  Then, "another officer . . . stepped on his back; [and] another mushed his head into the ground while a fourth tried to break his fingers."  (Id.)

According to Defendants, when Plaintiff was given orange prison clothing to wear, he threw the clothing to the ground and flailed his arms toward Enders.  (Id. at ¶ 50.)  Defendants allege that Enders responded by "t[aking] [P]laintiff to the ground in a controlled fashion."  (Id. at ¶ 51.)

Plaintiff was then dressed in a restraint garment referred to as a "green gown" and brought to the medical unit, where he was examined by the nurse.  (Defs.' Rule 56.1 Statement ¶ 52–53.)  Plaintiff alleges that he told the nurse that he was hurt "all over."  (Pl.'s Rule 56.1 Statement ¶ 54.)  The next day, Plaintiff submitted a sick call request, which indicated he had

pain in his right shoulder, hand, back, left thigh and right knee, and that he had itchy skin. (Defs.' Rule 56.1 Statement ¶ 58; Pl.'s Rule 56.1 Statement ¶ 58.)

Powers submitted a disciplinary report on March 9, 2010, charging Plaintiff with violations of the Westchester County Jail Code based on allegations of misconduct that Plaintiff disputes. (Defs.' Rule 56.1 Statement ¶¶ 67–68; Pl.'s Rule 56.1 Statement ¶ 68.)  The report states that Plaintiff refused to remove all of his clothing as part of the strip search, that Plaintiff threw his underwear and socks at Powers, and that Plaintiff pushed Powers's head onto the metal search table during the incident. (Defs.' Rule 56.1 Statement ¶¶ 67–68.)  Enders also prepared a disciplinary report detailing his version of the March 9, 2010, incident charging Plaintiff with violations of the Westchester County Jail code based on allegations of misconduct that Plaintiff disputes. (Defs.' Rule 56.1 Statement ¶¶ 69–70.)  Plaintiff was found guilty of four separate infractions based on the disciplinary charges in the reports and was sentenced to punitive segregation for sixty days. (Id. ¶ 71–72.)

While he was in punitive segregation, Plaintiff was unable to attend church or Bible study sessions, but was given a Bible upon his request. (Defs.' Rule 56.1 Statement ¶ 75; Pl.'s Rule 56.1 Statement ¶ 75.)

## DISCUSSION

A court "shall grant" summary judgment to a movant where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered material "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (internal citations omitted).  In

evaluating the record to determine whether there is a genuine issue as to any material fact, a court must resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Excessive Force Claims

An Eighth Amendment claim of "unnecessary and wanton infliction of pain" must meet objective and subjective requirements.  Sims v. Artuz, 230 F.3d 14, 20–21 (2d Cir. 2000).  For excessive force claims, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).  To satisfy the objective requirement, the alleged conduct must be serious enough to rise to the level of a constitutional injury.  Sims, 230 F.3d at 20–21.  While de minimis uses of force are "necessarily excluded from constitutional recognition, when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . . whether or not significant injury is evident."  Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) (internal citations and quotations omitted).  To satisfy the subjective prong, the defendant must have acted with a sufficiently culpable state of mind.  Id.

"[S]evere or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation."  Boddie, 105 F.3d 857, 861 (2d Cir. 1997) (citation omitted). It has "no legitimate penological purpose, and is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'"  Id. (citation omitted).  "The subjective element of the Eighth Amendment test may also be met by claims of sexual abuse.  Where no legitimate law enforcement or penological

purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." Id.

Excessive Force Claim Against Powers

Plaintiff alleges that, during a routine strip search, Powers reached across the metal search table, attempted to choke Plaintiff, and then grabbed and squeezed Plaintiff's testicles. Plaintiff alleges that Powers continued to hold and squeeze his testicles even after Plaintiff screamed, called for help, and tried to get away from Powers, and that Powers did not let go until other officers entered the room and pushed Plaintiff off the search table. Powers denies the alleged conduct, and alleges that Plaintiff assaulted him.

Taking Plaintiff's allegations as true and construing the facts in his favor, as the Court must at this summary judgment phase, Plaintiff's claim that his bare testicles were grabbed and squeezed for a significant period of time, even as he yelled for help, is sufficient to frame a genuine issue of fact as to whether Powers violated Plaintiff's Eighth Amendment rights. There is no apparent legitimate penological purpose for the alleged behavior, a circumstance which puts in issue both the objective and subjective components of the Eighth Amendment standard. See Boddie, supra. Even if Plaintiff's distress arose more from shock and humiliation than pain, the circumstances would still be "repugnant to the conscience of mankind and therefore violate[] the Eighth Amendment." Hogan, 738 F.3d at 516 (internal citation and quotation marks omitted); see Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012) ("An unwanted touching of an inmate's private parts, intended to humiliate the victim . . . can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant."); cf. Boddie, 105 F.3d 857 (small number of incidents in which inmate alleged he was verbally harassed, touched, and pressed against were not severe enough to state a constitutional harm).

Viewing the facts in the light most favorable to Plaintiff, the Court finds that genuine issues of material of fact exist and accordingly denies Defendants' motion for summary judgment with respect to the merits of the excessive force claim against Powers.

Excessive Force Claim Against Enders

Plaintiff alleges that Enders grabbed him from behind, while he was not resisting the ERT officers' instructions, and threw him roughly to the floor so that he could be stepped on and beaten by other ERT officers, one of whom who also allegedly tried to break Plaintiff's fingers. (Pl. Dep. Tr. at 187–190.) The videotape of the encounter shows Plaintiff being thrown or pulled backward; the view of Plaintiff is thereafter generally obscured by a number of riot-suited officers on and around his unclothed prone body. At one point, an officer can be seen pressing Plaintiff's face against the floor. (Mastellone Affirm., Ex. C.) Plaintiff alleges that he thereafter suffered pain all over his body. Plaintiff further alleges that Enders subjected him to unnecessary physical restraints. Taken in the light most favorable to Plaintiff, this evidence is sufficient to raise a genuine dispute of material fact as to whether Enders' conduct was objectively malicious and sadistic, as well as a genuine dispute as to Enders' subjective motivation in throwing or pulling Plaintiff to the floor. Defendants' summary judgment motion is therefore denied to the extent it seeks a determination in Defendants' favor on the merits of Plaintiff's excessive force claim against Enders.

Qualified Immunity

Powers and Enders each assert a defense of qualified immunity. "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." Tolan v. Cotton, 134 S. Ct. 1861, 1865, __ U.S. __ (2014) (per curiam) (internal citations and quotation marks omitted). "The first asks whether the facts, [t]aken in the light most favorable to

the party asserting the injury, . . . show the officer's conduct violated a [federal] right." Id. (internal citations and quotation marks omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was clearly established at the time of the violation." Id. at 1866 (internal citations and quotation marks omitted). Individual government actors "are shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. (internal citations and quotation marks omitted). "Courts have discretion to decide the order in which to engage these two prongs. But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Id. (internal citations and quotations marks omitted).

      Here, summary judgment on the issue of qualified immunity as to Defendants Powers and Enders would be inappropriate because, if Plaintiff's allegations are true, neither Powers nor Enders would be entitled to qualified immunity, as their conduct would have been so malicious and sadistic as to violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Id. Thus, genuine disputes of material fact preclude summary judgment on the issue of qualified immunity as to Plaintiff's excessive force claims against Defendants Powers and Enders.

Monell Claim

      Plaintiff asserts a claim against the County in connection with the correction officers' alleged excessive use of force under 42 U.S.C. § 1983. Plaintiff alleges that the County had a custom and practice of using excessive force and failed to adequately train or supervise correction officers in the use of force. In order to prevail on a Section 1983 claim against a municipality, a plaintiff must establish that his injuries were directly caused by a municipal

policy, custom or practice.  Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 692–94 (1978); see Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).

Plaintiff has cited to extensive portions of a letter issued by the Department of Justice ("DOJ") on November 19, 2009, describing the findings of an investigation of the Westchester County Jail pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997.  ("Findings Letter," Mastellone Affirm., Ex. BB.)  The Findings Letter describes many improper uses of force by the ERT in the Westchester County Jail, including the use of chemical crowd control contaminants and the application of "needlessly painful escort techniques (bent wrist locks while apparently applying intense pressure)," the application of force and the disregard of some inmates' mental impairments (Mastellone Affirm., Ex. BB at 8), and the use of force against apparently compliant inmates that resulted in serious injury evidenced by bleeding and laceration (id. at 10).

Defendants, who had previously produced in discovery a copy, labeled as a draft, of policy revisions responsive to the DOJ report, tendered a "final" copy of the same revisions in their reply papers in support of the instant motion, and assert that they had already promulgated new policies adopting the recommendations of the DOJ prior to the March 9, 2010, incident involving Plaintiff, Powers, Enders, and the ERT.  Defendants argue that that the existence of these policies is sufficient to eliminate any factual issue as to whether, even if Plaintiff's allegations are true, the beating was the product of the County's custom or policy of using excessive force against inmates.  Plaintiff requests that Defendants be precluded from using the

"final" memorandum, in light of Defendants' failure to produce it before the close of discovery. See Fed. R. Civ. P. 37(c)(1).[3]

Even taking the proffered "final" policy into account, summary judgment in Defendants' favor is not warranted. The existence of a "final" policy document that was allegedly released approximately one month before the March 9, 2010, incident is not sufficient to eliminate the issues of fact raised by Plaintiff as to whether the alleged incident was the product of the longstanding policies and practices documented in the extensive findings of the DOJ, which describe conduct involving officers pressing the faces of inmates against inanimate objects and the use of excessive restraints.  ("Findings Letter," Mastellone Affirm., Ex. BB at 9–10.)  There remain triable issues of fact including, but not limited to, whether any new policy was communicated or effectively implemented before the March 9, 2010, incident. The Court accordingly rejects Defendants' motion to dismiss Plaintiff's Monell claim, and denies Plaintiff's preclusion request without prejudice to renewal as a motion in limine prior to trial. See supra note 3.

---

[3]   Rule 37(c)(1) provides that a party who fails to provide information as required by Rule 26(a) or (e) (disclosure provisions requiring, inter alia, automatic disclosure of "all documents . . . that the disclosing person has in its possession, custody or control and may use to support its claims or defenses") "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Court is empowered to impose additional or alternative sanctions "on motion and after giving an opportunity to be heard." Fed. R. Civ. P. 26(a)(1), 37(c)(1). Defendants have proffered no justification whatsoever for their failure to produce the "final" version in a timely fashion. That failure is not harmless, furthermore, in light of their use of the document in a reply submission to bolster their remediation argument. However, because the document is not dispositive of the issues before the Court on this motion and neither party has briefed the propriety of preclusion and/or additional or different sanctions in connection with any trial of this matter, the Court denies Plaintiff's request for preclusion without prejudice to renewal as a motion in limine.

Malicious Prosecution Claims

Plaintiff asserts a malicious prosecution claim against Powers under state law and under 42 U.S.C. § 1983 (i.e., Fourth Amendment violation).  A malicious prosecution claim under state law or pursuant to Section 1983 consists of four elements.  An individual asserting a malicious prosecution claim must show that (1) the defendant commenced or continued a criminal proceeding against plaintiff; (2) the proceeding was terminated in favor of the plaintiff; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice.  Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).  A plaintiff asserting a claim for malicious prosecution under Section 1983 must also demonstrate that he suffered a "sufficient post-arraignment liberty restraint to implicate [his] Fourth Amendment rights."  Rohman v. New York City Transit Authority, 215 F.3d 208, 215 (2d Cir. 2000).

Here, Plaintiff was charged with assaulting Powers, brought to trial in state court, and acquitted by a jury.  Thus, the first two elements of a malicious prosecution claim are satisfied.

Powers argues that Plaintiff is precluded from seeking to prove a lack of probable cause for the prosecution because the state trial judge denied Plaintiff's motion for a trial order of dismissal after the government had concluded its case, but before the defense had presented its case.  (See Mastellone Affirm., Ex. Y.)  In denying the motion, the trial judge found that "[t]here [was] sufficient evidence that the elements of the crime [had] been introduced," acknowledging that "the legal requirement for the People on a prima facie case is minimum."  (Id. at 75.)  The trial court's rejection of Plaintiff's motion is not determinative of the question of probable cause because, on such motion practice, the trial court merely determines whether "the trial evidence, if accepted as true without considering questions as to the quality or weight of the evidence, is

legally insufficient to establish every element of the offense charged." People v. Sala, 258 A.D. 2d 182, 188 (2d Dep't 1999) (citations omitted; emphasis supplied), aff'd, 95 N.Y. 2d 254 (2000).  The trial court was not empowered to consider any contention that the statements of Powers were untrue, which is the issue at the heart of Plaintiff's contention that probable cause for the prosecution was lacking.  Therefore, the trial judge's determination that there was "sufficient evidence that the elements of the crime [had] been introduced," is not preclusive of the issue of whether there was probable cause for the criminal proceeding.

Drawing all factual inferences in favor of the Plaintiff, as this Court must upon summary judgment motion practice, the Court finds that Plaintiff's allegation that Powers version of the March 9, 2010, incident is false creates a genuine dispute of material fact as to whether there was probable cause for the criminal proceeding.  This satisfies the third element of a malicious prosecution claim.  Plaintiff's allegations are also sufficient, at the summary judgment stage, to satisfy the fourth element.  The Court, accordingly, denies Powers' motion to dismiss the malicious prosecution claim asserted under New York law.

The Court notes that, as explained above, malicious prosecution claims brought under Section 1983 require evidence of a "sufficient post-arraignment liberty restraint," see Rohman, 215 F.3d at 215.  An already incarcerated individual bringing a claim of malicious prosecution must produce evidence of a distinct restraint on his liberty, see Holmes v. Grant, No. 03-CV-3426, 2006 WL 851753, at *14 (S.D.N.Y. Mar. 31, 2006) (dismissing malicious prosecution claim brought under Section 1983 because incarcerated plaintiff suffered no new seizure "as a result of being charged with new criminal offenses and being forced to appear in court to defend himself").  The parties have not briefed this issue, and it is unclear on this record whether Plaintiff suffered a distinct restraint as a result of the prosecution based on Powers'

account of the March 9, 2010, incident.  Cf. Allen v. City of New York, 480 F. Supp. 2d 689, 717–18 (concluding that plaintiff alleged a sufficient deprivation of liberty where he spent time in state custody as a result of state charges brought against him while he was serving his federal sentence).  Defendants' motion for summary judgment with respect to Plaintiff's malicious prosecution claim brought under Section 1983 is also denied.

Free Exercise of Religion Claim

Plaintiff asserts a claim under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") for denial or interference with the exercise of his religion while he was placed in punitive segregation as a result of being found guilty of disciplinary violation charges.  (Defs.' Rule 56.1 Statement ¶ 71.)  The RLUIPA provides that governments may not impose a substantial burden on the religious exercise of inmates, unless the burden is the least restrictive means of furthering a compelling governmental interest.  42 U.S.C. § 2000cc-1(a); see United States v. Salahuddin, 467 F.3d 263, 273 (2d Cir. 2006).

To prevail on a First Amendment religious exercise claim asserted under Section 1983, a plaintiff must prove "purposeful discrimination."  See Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).  Courts analyze religious exercise claims asserted by prisoners under a "reasonableness" test to determine whether the conduct that "burdens a protected right . . . is reasonably related to legitimate penological interests."  Salahuddin, 467 F.3d at 274 (internal citations and quotations omitted).  The reasonableness of such a restrictive prison regulation or practice is assessed by applying a four-factor test: (1) whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; (2) whether prisoners have alternative means of exercising the burdened right; (3) the impact on guards, inmates, and prison resources of accommodating the right; and (4) the existence of

alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.  Turner v. Safley, 482 U.S. 78, 90–91 (1987).  A prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.  Salahuddin, 467 F.3d at 274–75.  The defendant then must identify "the legitimate penological interests that justify the impinging conduct, though the burden remains with the prisoner to show that these concerns were irrational."  Id. at 275.

    Here, Plaintiff was placed in punitive segregation as a result of being found guilty of certain disciplinary violations, as charged in Enders' and Powers' reports of the March 9, 2010, incident. Plaintiff alleges that, as a result of being placed in punitive segregation, he was unable to attend church or Bible study classes.  He also alleges that he only a received a Bible three days after he requested one.  At the summary judgment stage, these allegations are sufficient to meet Plaintiff's burden of showing that the conduct in question substantially burdened his religious beliefs.

    Defendants identify no legitimate penological interest that justifies the substantial burdens.  Their submissions include the Westchester County Department of Correction Policy and Procedure ("Policy"), which provides that the purpose of disciplinary segregation is to "provide a safe, secure, and humane environment for those inmates that are violent towards staff or other inmates and pose a serious threat."  (Mastellone Affirm., Ex. W at 1.)  The Policy also provides that, "[o]n a case by case basis, limited access to Programs may be granted to all inmates on Disciplinary Segregation."  Defendants have proffered no explanation or substantiation of any reason for denying Plaintiff access to church and Bible study programs under this exception, and thus have not met their burden of demonstrating that the restrictions imposed on Plaintiff were reasonably related to a legitimate penological interest.  The Court

therefore denies Defendants' motion for summary judgment dismissing Plaintiff's religious exercise claim brought under Section 1983.  A fortiori, Defendants have failed to identify a compelling government interest warranting the infringement of Plaintiff's rights under the RLUIPA, and the Court, accordingly, denies Defendants' motion to the extent it seeks summary judgment dismissing the religious exercise claim brought under the RLUIPA.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment denied. This Memorandum Order resolves docket entry numbers 164 and 182.

The parties are directed to meet promptly with Judge Ellis to discuss outstanding pretrial matters and settlement.

SO ORDERED.

Dated: New York, New York
September 26, 2014

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge